1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMISON CUMMINGS, et al.,

          Plaintiffs,

     v.

PLEASANTON UNIFIED SCHOOL
DISTRICT,

          Defendant.

Case No.  22-cv-02937-CRB

**ORDER DENYING MOTION TO DISMISS**

P.C. is a student in the Pleasanton Unified School District ("the district").  She asserts multiple claims against the district based on the allegations that the district failed to provide her with meaningful access to a public education and retaliated against her as she attempted to assert her educational rights.  Among the causes of action that P.C. asserts are claims for retaliation in violation § 504 of the Rehabilitation Act; retaliation in violation of the Americans with Disabilities Act ("ADA"); discrimination in violation of § 504 of the Rehabilitation Act; and discrimination in violation of Title II of the ADA.  The district moves to dismiss these four causes of action, contending that P.C. fails to plausibly allege any of the four claims.  Because P.C. has plausibly alleged each claim, the motion to dismiss is denied.[1]

---

[1] The Court hereby vacates the motion hearing currently set for October 14, 2022.  See Civil Local Rule 7-1(b).

## I.      BACKGROUND

P.C. is a student in the district.[2]  Compl. ¶ 9.  She has been diagnosed with Dyslexia, Dyscalculia, Dysgraphia, ADHD, and Adjustment Disorder Anxiety.  Id. ¶ 16. Since November 2016, P.C. has been eligible for special education services under the Individuals with Disabilities Education Act ("IDEA").  Id. ¶ 9.  IDEA requires public school districts to make available a free appropriate public education to individuals with learning disorders.  See id.  A free appropriate public education incorporates curriculum and teaching aids tailored to help students overcome their learning challenges.  See id.

P.C.'s learning challenges make it very difficult to learn math through traditional teaching methodologies.  Compl. ¶ 22.  In 2017, P.C. began using a third-party service that provided her a program called Making Math Real to assist her studies.  Id. ¶ 22.  In July 2018, P.C. and her parents met with teachers and staff from the district to discuss developing an individualized education plan ("IEP") for her.  Id.  The discussions centered on how the district could implement Making Math Real (or a comparable learning program) to enable P.C. to continue her math education within the district.  Id. ¶ 22.  In April 2019, following discussion with P.C.'s parents, the district's IEP team determined that P.C. "required the teach methodologies of Wilson Reading System and Making Math Real" to receive a free appropriate public education.  Id. ¶ 23.

In June 2019, P.C.'s parents met with the district to discuss a plan to transition P.C. to Making Math Real.  Compl. ¶ 24.  The district allegedly "committed to hiring a staff member trained in Making Math Real or training a staff member."  Id.  ¶ 24.  Despite the multiple meetings with the district, P.C. alleges that "[a]t no point between the 2018 meeting and the filing of this complaint, has [the district] discussed or offered an alternative explicit, multisensory math intervention comparable to Making Math Real."  Id. ¶ 25.  P.C. alleges that the district has "a teacher training in Making Math Real on staff," but it has not made the teacher available to her.  Id. ¶ 26.

---

[2] Plaintiff is a minor who is proceeding through her parents.

United States District Court
Northern District of California

1    During the 2020–21 school year, P.C.'s parents asked the district to provide the IEP

2    that had been developed for P.C.  Compl. ¶ 27.  The district's former Senior Director of

3    Special Education allegedly refused to provide a copy of P.C.'s IEP.  Id. ¶ 27.  In the

4    2021–22 school year, P.C.'s parents again requested her IEP, but district administrators

5    again refused to provide it.  Id. ¶ 28.  P.C. alleges that during the 2021–22 school year, the

6    district placed P.C. in general education classes.  Id. ¶ 31.  However, in an apparent effort

7    to accommodate her learning disabilities, P.C. "was not graded to the same standards in

8    her writing assignments as non-disabled students."  See id. ¶ 31.  In addition, the district's

9    teachers "did not send homework home with P.C. and failed to give her feedback on her

10   assignments."  Id. ¶ 30.

11   In July 2021, P.C.'s parents filed a "Uniform Complaint" against the district,

12   alleging that the district was failing to provide P.C. with a free and appropriate public

13   education.  Id. ¶ 34.  P.C. alleges that pursuant to district policy, the district was obligated

14   to hold an "investigative meeting" within 10 days of the Uniform Complaint being filed

15   and offer mediation within 15 days.  Id. ¶ 37.  The purpose of the investigative meeting

16   and mediation were to address and ideally resolve the concerns raised in the Uniform

17   Complaint.  See id.  The complaint alleges that the district did not hold an investigative

18   meeting or a mediation proceeding.  See id.  Instead, on September 27, 2021, the district

19   issued a response to the Uniform Complaint.  Id. ¶ 39.  Around the time it issued its

20   response, the district also undertook an investigation of the issues raised by the Uniform

21   Complaint, although not on the schedule set forth by district policy.  See id. ¶ 44.

22   In July 2021, P.C.'s parents filed two public records requests under the California

23   Public Records Act, asking the district to provide staff emails relating to the education that

24   the district was providing P.C.  See Compl. ¶ 32.  On August 3, 2021, the district denied

25   the public record requests.  Id. ¶ 35.  Two days later, P.C.'s parents "attempted to clarify

26   their requests for public records and offered to meet with [district] staff to further clarify

27   and narrow their requests."  Id. ¶ 37.  In late August 2021, the district hired outside counsel

28   who wrote to P.C.'s parents "denying all requests related to their daughter."  Id. ¶ 39.

3

On October 13, 2021, P.C.'s parents initiated a due process hearing with an administrative law judge on the ground that the school district continued to deny P.C. a free appropriate public education.  See id. ¶ 42, 46.  On October 18, 2021, P.C.'s parents filed a second Uniform Complaint.  Id. ¶ 43.  The second Uniform Complaint alleged that district staff members were retaliating against them for inquiring about P.C.'s education.  Id.  The "second Uniform Complaint" alleges multiple forms of retaliation, including "refusing to hold IEP meetings, impeding P.C.'s stay put rights, creating a hostile educational environment, refusing to provide a copy of P.C.'s IEP, refusing to provide educational records, refusing to provide records under the California Public Records Act, etc."  Id.

On February 24, 2022, the administrative law judge issued a decision finding that the district "failed to have an IEP in place at the beginning of the 2021–2022 school year producing 'a series of results damaging to Parents' participatory rights."  Id.  The administrative law judge found that the district's "significant violations left P.C. with a program that was obscure and staff were left wondering what program to follow."  Id. ¶¶ 47–48.  In addition, the administrative law judge found that P.C.'s "Parents' ability to seek due process was negatively impeded and [P.C.'s] right to invoke stay put was also negatively impacted."  Id.; see also ¶ 50(a)–(e).  The administrative law judge found that the district's actions "led to the implementation of an IEP for which they did not have lawful parental agreement."  Id. ¶ 49.

The administrative law judge ordered the district to take several corrective actions.  See id. ¶¶ 54–55(a)–(b).  The corrective actions included meeting with P.C.'s parents in an effort to develop a new IEP for P.C. and providing "at least 10 hours of training to its staff in the writing, processing, and recording of IEP's [sic] and the legal requirements surrounding the completion and presentation of IEP's [sic]."  See id.  P.C. alleges that while the district hired a "trainer" to conduct the training required by the administrative law judge's order, the trainer "did not meet the decision's criteria because [he] is not a special education attorney or experienced administrator," and the training "did not include

1   all staff members required by the [the ALJ decision] as it did not include P.C.'s future case

2   managers and the appropriate administrative decision-makers." Id. ¶¶ 68–70.

3       On March 14, 2022, an attorney retained by the district issued a "Final Written

4   Decision and Investigation Report," concluding the investigation that the district undertook

5   into the concerns that P.C. had raised. Compl. ¶ 57. The Final Written Decision and

6   Investigation Report arrived at findings similar to those of the administrative law judge.

7   See id. In particular, the report concluded that P.C.'s parents "raised legitimate concerns"

8   and that the district's "Senior Director of Special Education" had "an overly defensive

9   reaction to the parent's protected activities [which] caused him to take adverse actions

10  towards the parents." Id.; see also ¶ 58(a)–(d).

11      In March 2022, a special education attorney retained by the district contacted P.C.'s

12  parents to set up a meeting to discuss how P.C.'s IEP could be modified so that she would

13  receive a free appropriate public school education. Compl. ¶ 56. P.C. alleges that the

14  district subsequently violated the administrative law judge's decision because the district

15  "did not attempt to reach an agreement with them regarding P.C.'s services" and "[s]ome

16  big changes were made to the offer of FAPE without any explanation or discussion with

17  [P.C.'s parents]." Id. ¶ 61. P.C.'s parents "tried to give their input but their input was not

18  considered." Id. Instead, the district sent P.C.'s parents a new IEP in March 2022. Id. ¶

19  62.

20      The complaint further alleges that the IEP sent to P.C.'s parents in March 2022 was

21  not implemented. See Compl. ¶¶ 62–64. Instead, the district started "a whole new IEP

22  process," apparently in order to develop a new education plan for P.C. Id. On March 24,

23  2022, P.C.'s parents filed another public records request "to acquire public records which

24  would help them advocate for their daughter." Id. ¶ 66. In April 2022, the district

25  responded that it "would not produce records until July 18, 2022." Id.

26  **II.   LEGAL STANDARD**

27      Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

28  which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is

1  warranted where a complaint lacks "a cognizable legal theory" or "sufficient facts alleged"
2  under such a theory.  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir.
3  2019).  Whether a complaint contains sufficient factual allegations depends on whether it
4  pleads enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v.
5  Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
6  (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the
7  court to draw the reasonable inference that the defendant is liable for the misconduct
8  alleged."  Id. at 678.  This is not a "probability requirement," but it requires more than a
9  "sheer possibility" that the defendant is liable: "Where a complaint pleads facts that are
10  merely consistent with a defendant's liability, it stops short of the line between possibility
11  and plausibility of entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

## III.    DISCUSSION

The district moves to dismiss the second, third, fourth, and fifth causes of action
alleged in P.C.'s complaint.  See MTD at 4.  The second cause of action is for retaliation in
violation of § 504 of the Rehabilitation Act; the third cause of action is for retaliation in
violation of the ADA; the fourth cause of action is for discrimination in violation of § 504
of the Rehabilitation Act; and the fifth cause of action is for discrimination in violation of
Title II of the ADA.  See generally Compl. ¶¶ 78–109.  The district argues that P.C. has
failed to plausibly allege any of the four causes of actions.  MTD at 4.  For the reasons set
forth below, P.C. has plausibly alleged all four causes of action.  Thus, the district's
motion to dismiss is denied.

### A.    Retaliation claims under the Rehabilitation Act and ADA

P.C. alleges retaliation claims under § 504 of the Rehabilitation Act and the ADA.
P.C. alleges that the district retaliated against her by refusing to provide education records,
refusing to hold IEP meetings, and frustrating her parents' efforts to participate in the IEP
process.  See Comp. ¶ 96.

The same elements apply to relation claims brought under the Rehabilitation Act
and the ADA.  See Brooks v. Capistrano Unified Sch. Dist., 1 F. Supp. 3d 1029, 1035

United States District Court
Northern District of California

1   (C.D. Cal. 2014) ("[T]he legal elements and the production of proof for a retaliation claim

2   under the Rehabilitation Act is the same as that used under the ADA[.]"); see also Douglas

3   v. California Dep't of Youth Auth., 285 F.3d 1226, 1229 n.3 (9th Cir. 2002).  Both statutes

4   contain anti-retaliation provisions that "permit non-disabled persons standing to bring

5   claims for retaliation suffered in protecting the rights of disabled persons."  Lee v.

6   Natomas Unified School Dist., 93 F. Supp. 3d 1160, 1167 (E.D. Cal. 2015).  To plead a

7   prima facie retaliation claim, a plaintiff must plausibly allege that (1) she engaged in a

8   protected activity and the district knew that she was engaged in a protected activity; (2) the

9   district took an adverse action against her; and (3) a causal connection exists between the

10  protected activity and the adverse action.  Brooks, 1 F. Supp. at 1036; see also Pardi v.

11  Kaiser Foundation Hosp., 389 F.3d 840, 849 (9th Cir. 2004).

12          P.C. plausibly alleges claims for retaliation under the Rehabilitation Act and the

13  ADA.  First, P.C. plausibly alleges that her parents engaged in protected activity and that

14  the district was aware of the activity.  "Advocating for disabled students on issues related

15  to their federal and state educational rights is a protected activity."  Lee, 93 F. Supp. 3d at

16  1168; Barker v. Riverside Cnty. Off. of Educ., 584 F.3d 821, 826 (9th Cir. 2009).  Here,

17  P.C. alleges that her parents sought information about the education that the district was

18  providing her in order to determine whether the education was adequate.  P.C. further

19  alleges that after P.C.'s parents determined, at least in their view, that the district was not

20  providing P.C. an appropriate education, P.C.'s parents requested meetings with district

21  officials to discuss steps that could be taken to improve P.C.'s education.  All of these

22  activities are forms of advocacy related to P.C.'s educational rights.  Further, the district

23  received multiple communications from P.C.'s parents regarding P.C.'s education, and

24  took several steps in response, demonstrating that it knew very well that P.C.'s parents

25  were advocating for her educational rights.

26          Second, P.C. plausibly alleges that the district took adverse action in response to her

27  parents' protected activities.  "An adverse action is an act that likely would have dissuaded

28  a person from making a complaint."  See Lee, 93 F. Supp. 3d at 1168 (citing Burlington

United States District Court
Northern District of California

1  Northern & Sante Fe Railway Co. v. White, 548 U.S. 53, 68 (2006)).  Here, P.C. plausibly

2  alleges that the district engaged in multiple adverse actions.  The adverse actions allegedly

3  included refusing to provide P.C.'s parents with her education records and refusing to meet

4  with P.C.'s parents to discuss the education the district was providing her.  The complaint

5  supports the reasonable inference that the district undertook these actions in an effort to

6  stymie P.C.'s parents' advocacy of their daughter's educational rights.  The complaint

7  plausibly alleges that the district sought to frustrate P.C.'s parents' access to pertinent

8  information in order to make it more difficult for them to advocate for their daughter.

9      Third, P.C. plausibly alleges a causal connection between her parents' protected

10  activities and the district's adverse actions.  "Courts have generally held that causation can

11  be inferred from timing alone where the adverse action follows closely on the heels of the

12  protected activity." See Lee, 93 F. Supp. 3d at 1169 (citing Clark County Sch. Dist. v.

13  Breeden, 532 U.S. 268, 273–74 (2001)).  "When an adverse action closely follows a

14  complaint, retaliatory intent may be inferred."  Id. at 1169 (citing Bell v. Clackamas

15  County, 341 F.3d 858, 865–66 (9th Cir. 2003)).  Here, the timing of the district's adverse

16  actions supports the reasonable inference that they occurred in response to P.C.'s parents'

17  protected activities.  Shortly after P.C.'s parents began to advocate for their daughter, the

18  district took actions geared toward frustrating their advocacy efforts.  The timing of the

19  actions and their effects on P.C.'s parents' advocacy are sufficient to establish a plausible

20  connection between the protected activity and the district's alleged retaliatory responses.

21      The district points out that it "is well-established that protection under the ADA (or

22  Section 504) against retaliation does not extend to a plaintiff's attempts to exercise rights

23  granted or protected by the IDEA."  See, e.g., Reply at 3 (citing C.W. v. Capistrano

24  Unified Sch. Dist., 784 F.3d 1237, 1247 (9th Cir. 2015)).  The argument is not persuasive

25  because P.C. alleges that the district retaliated based on her and her parents' efforts to

26  exercise rights granted by § 504 and the ADA.  See Compl. ¶¶ 100–01, 108.  In contrast to

27  C.W., the retaliation claims here are not based on the exercise of rights granted or

28  protected by the IDEA.  They are based on retaliatory actions that the district allegedly

took in response to the efforts by P.C. and her parents to exercise rights protected by § 504 and the ADA.

**B.     Claims under § 504 of the Rehabilitation Act and Title II of the ADA**

P.C. alleges that the district violated § 504 of the Rehabilitation Act and Title II of the ADA by failing to provide her meaningful access to a public education.  While the claims "may be addressed together," see A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1203–04 (9th Cir. 2016), an overview of the two statutory schemes is helpful and is set forth below.

Section 504 of the Rehabilitation Act of 1973 is a broad civil rights provision "to prevent discrimination against all handicapped individuals … in employment, housing, transportation, education, health services, or any other federally-aided programs."  See Alexopulos By & Through Alexopulos v. San Francisco Unified Sch. Dist., 817 F.2d 551, 554 (9th Cir. 1987).  "Section 504 applies to all public school that receive federal financial assistance."  J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 570 F. Supp. 2d 1212, 1224 (E.D. Cal. 2008).  The remedies available under § 504 of the Rehabilitation Act include compensatory damages.  Mark H. v. Hamamoto, 620 F.3d 1090, 1095 fn 5 (9th Cir. 2010).

Section 504's implementing regulations require school districts that receive federal funds to "provide a free appropriate public education [FAPE] to each qualified handicapped person."  34 C.F.R. § 104.33.  The "FAPE under § 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the 'design' of a child's educational program."  Mark H., 513 F.3d at 924.  A FAPE under § 504 "requires education and services 'designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met.'"  J.W., 570 F. Supp. 2d at 1225 (quoting 34 C.F.R. § 104.33(b)(1)).  The "focus of the prohibition in § 504 is 'whether disabled persons were denied 'meaningful access' to state provided services.'"  Mark H., 513 F.3d at 937 (quoting Crowder v. Kitagawa, 81 F.3d 1480, 1484 (9th Cir. 1996)).

"Title II of the ADA was modeled after section 504 of the Rehabilitation Act."

9

1   A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1203 (9th Cir. 2016)

2   (citing Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001)).  In relevant part,

3   it states that "no qualified individual with a disability shall, by reason of such disability, be

4   excluded from participation in or be denied the benefits of the services, programs, or

5   activities of a public entity, or be subjected to discrimination by any such entity."  See 42

6   U.S.C. § 12132.  The "elements of a valid Title II claim do not differ in any material sense

7   from those of a valid section 504 claim and the two may be addressed together."  See A.G.,

8   815 F.3d at 1203–04; see also City of Los Angeles v. AECOM Servs., 854 F.3d 1149,

9   1160 (9th Cir. 2017).

10       "A plaintiff bringing suit under section 504 or Title II of the ADA must show: (1)

11   she is a qualified individual with a disability; (2) she was denied 'a reasonable

12   accommodation that [she] needs in order to enjoy meaningful access to the benefits of

13   public services;' and (3) the program providing the benefits receives federal financial

14   assistance."[3]  See A.G., 815 F.3d at 1204 (quoting Mark H. v. Hamamoto, 620 F.3d 1090,

15   1097 (9th Cir. 2010)); McIntyre v. Eugene Sch. Dist. 4J, 976 F.3d 902, 912 (9th Cir.

16   2020).  "A plaintiff may satisfy prong two by showing that the federally funded program

17   denied her services that she needed to enjoy meaningful access to the benefits of a public

18   education and that were available as reasonable accommodations."  See A.G., 815 F.3d at

19   1204.  Reasonableness "'depends on the individual circumstances of each case, and

20   requires a fact-specific, individualized analysis of the disabled individual's circumstances

21   and the accommodations that might allow him to enjoy meaningful access to the

22   program.'"  Mark H., 620 F.3d at 1098 (quoting Vinson v. Thomas, 288 F.3d 1145, 1154

23   (9th Cir. 2002)) (cleaned up).

24       To recover "for damages under section 504 or Title II, plaintiffs must prove a mens

25   rea of intentional discrimination and that standard may be met by showing deliberate

26

27   ───────────────

28   [3] The district's motion to dismiss argues that heightened standards apply to the "meaningful
access" claims, see MTD at 12–14 & 15–16, but the standards the district cites are not based on
the governing Ninth Circuit case law.  See Mark H., 620 F.3d at 1097; McIntyre, 976 F.3d at 912.

United States District Court
Northern District of California

1

indifference, not only by showing discriminatory animus." See A.G., 815 F.3d at 1204

2

(cleaned up; citation omitted).  Deliberate indifference "'requires both knowledge that a

3

harm to a federally protected right is substantially likely, and a failure to act upon that …

4

likelihood.'" Id. (quoting Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir.

5

2001)).  A "plaintiff establishes the requisite knowledge (or notice) on behalf of the

6

defendant when she shows that she alerted the public entity to [her] need for

7

accommodation (or where the need for accommodation is obvious, or required by statute

8

or regulation)." Id. (citation omitted; modification in original).

9

Here, P.C. plausibly alleges that the district denied her access to learning resources

10

that she needed to enjoy meaningful access to the benefits of a public education and that

11

the resources were available as reasonable accommodations.  P.C. alleges that the district

12

failed to provide her with an education that meaningfully accounted for her learning

13

disabilities.  In particular, P.C. alleges that the district failed to provide her with the

14

learning resources—primarily access to Making Math Real—required to provide her

15

meaningful access to public education.  Moreover, P.C. plausibly alleges that these

16

services were available as reasonable accommodation.  She alleges that the district had

17

staff trained in administering Making Math Real, but that the district did not make the staff

18

available to assist with P.C.'s education, even though P.C.'s parent had lobbied the district

19

for more than a year to make these resources available to P.C.

20

The complaint also plausibly alleges that the district acted with deliberate

21

indifference to P.C.'s rights.  It alleges that P.C.'s parents repeatedly notified the district

22

that P.C. did not have access to Making Math Real and other learning resources she

23

needed.  Despite the repeated notice, the district allegedly failed to respond to P.C.'s

24

parents' concerns.  Rather than providing P.C. with the learning resources, the district

25

allegedly placed P.C. in general education classes, even though "P.C.'s general education

26

teachers have not been properly trained to ensure she is able to 'enjoy meaningful access'

27

to public education." Compl. ¶ 102.  In addition, in an apparently ham-handed attempt to

28

account for P.C.'s learning disabilities, the district allegedly held P.C. to lower standards

11

than those imposed on her peers, including failing to assign her homework and failing to provide feedback on her schoolwork.  Viewed in the light most favorable to P.C., the complaint plausibly alleges that the district was well aware that P.C. required special resources to have meaningful access to the benefits of public education, but it failed to provide those resources, acting with deliberate indifference to any harms that its failure could cause.

IV.   **CONCLUSION**

For the foregoing reasons, the district's motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: October 11, 2022

CHARLES R. BREYER
United States District Judge